UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM ELIAS, *et. al.*,

    Plaintiffs,

v.

FEDERAL HOME MORTGAGE
CORPORATION,

    Defendant.

                                                            /

Case No. 13-10387

Honorable John Corbett O'Meara

## **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This matter came before the court on defendant Federal Home Mortgage Corporation's February 14, 2013 motion to dismiss. Plaintiffs filed a response March 7, 2013; and Defendant filed a reply March 25, 2013. Oral argument was heard April 11, 2013.

## **BACKGROUND FACTS**

Defendant Federal Home Mortgage Corporation ("Freddie Mac") contracts with mortgage sellers and services who sell mortgage loans to, and service mortgage loans for, Freddie Mac according to the terms set forth in certain purchase agreements. In order to protect the integrity of its mortgage purchase and servicing functions, Freddie Mac maintains an Exclusionary List. "Persons or entities whose conduct presents an undue risk to Freddie Mac, as determined by Freddie Mac, may be placed on the Exclusionary List, in which case they are prohibited from doing business with Freddie Mac, either directly or indirectly." ECF Doc. 1-2, p.1.

Defendant contends that contrary to Plaintiffs' allegations, Freddie Mac's placement of a person/entity on the Exclusionary List is not a statement that that person/entity has engaged in fraud or illegal activity. Rather, Freddie Mac contends that it represents its opinion that the person/entity

"presents an undue risk [of loss] to Freddie Mac." Id.  The Exclusionary List Policy states that the grounds for placement on that list include "[b]usiness practices that Freddie Mac determines are and undue risk" and "[o]ther grounds that in Freddie Mac's judgment may adversely affect Freddie Mac." Id. at p. 2.

The policy also provides that Freddie Mac will give the person/entity a summary of its findings and allow the person/entity an opportunity to submit a written response.  Only after the response will Freddie Mac render a decision regarding placement on the Exclusionary List.  After two years on the Exclusionary List, the excluded party may request removal from the List. Sellers/Servicers are not precluded from doing business with a person/entity on the Exclusionary List; however, they are prohibited from selling loans to Freddie Mac or servicing Freddie Mac loans if a person/entity on the List played a role in those transactions.  Therefore, sellers can retain the loans originated by those persons/entities, or they can sell those loans to other participants on the secondary market.  Furthermore, Freddie Mac requires its sellers/servicers to maintain confidentiality of the Exclusionary List.  The identities are not publicly available.

In 2012, Freddie Mac's Financial Fraud Investigation Unit conducted an investigation of Plaintiffs, resulting in an October 1, 2012 letter to them which provided them with notice of, and reasons for, their proposed placement on the List.  They were given ten days to provide a response. Plaintiffs filed their response in a timely fashion; and after reviewing the response, Freddie Mac informed Plaintiffs on October 31, 2012, that it would place them on the Exclusionary List effective November 1, 2012, "to prevent undue risk to the company."

An entity known as FMG, which Freddie Mac claims is owned by Thomas Glassman, has become the subject of cease and desist letters in several states.  Although plaintiff William Elias

denies he is Glassman, it is not disputed that public records show Glassman used an address for his registered office that is the same as the residence address for Elias. Public filings also contain signatures for Glassman that are not similar to one another. Elias has filed an affidavit stating that WJE Enterprises operated under the name of FMG and that Elias divorced himself from WJE and FMG when he allegedly sold his interest in WJE to Glassman in March 2009. The consideration for this sale of a business, however, was one dollar. Freddie Mac contends that Elias has had considerable involvement with FMG after his alleged sale of WJE to Glassman.

Freddie Mac's investigation also revealed that plaintiff MKNA, which is not a law firm, was listed on HUD-1 settlement statements as charging "attorney fees" to the seller. These attorney fees were actually pro-rated taxes that should have been paid to Freddie Mac and were instead used to pay a $2,500 short-sale negotiation fee charged by MKNA, a fee not permitted by Freddie Mac. Even assuming that Elias and Glassman are different persons and that Elias cannot be charged with Glassman's improper actions with respect to FMG, public records indicate that on October 18, 2010, Glassman himself became the registered agent for plaintiff TaxFaster L.L.C., which is owned by Elias and which adopted the assumed name of MKNA on April 28, 2011.

Plaintiffs have filed an eight-count complaint against Freddie Mac, alleging the following causes of action: 1) tortious interference with a business relationship or expectancy; 2) tortious interference with contracts; 3) business defamation; 4) individual defamation of defendant William Elias; 5) unfair business competition in violation of the Sherman Act; 6) unfair competition in violation of Michigan's antitrust law; 7) civil conspiracy; and 8) injunctive relief. This court denied Plaintiffs' claim for injunctive relief February 1, 2013.

## LAW AND ANALYSIS

### I. INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONS

Plaintiffs allege that by placing them on the List, Freddie Mac interfered with over 1,200 agreements they had with individuals seeking short-sale consultation services. Under Michigan law, to establish a claim for tortious interference, a plaintiff must show the following: 1) the existence of a valid business relation or expectancy, 2) knowledge of the relationship or expectancy on the part of the defendant, 3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and 4) resultant damage. Grand Rapids Plastics, Inc. v. Lakian, 188 F.3d 401, 407 (6th Cir. 1999).

With respect to the third element, "the interference . . . must be improper in addition to being intentional." Formall, Inc. v. Community Nat'l Bank of Pontiac, 166 Mich. App. 772, 779 (1988). "Improper means illegal, unethical, or fraudulent." Id.

In this case Plaintiffs have not plausibly alleged a "per se wrongful act" or a lawful act committed with malice by Freddie Mac. A "mere refusal to deal" with a party does not constitute intentional interference with that party's contractual or business relations with others. Restatement (Second) of Torts § 766. Also, "defendants motivated by legitimate personal and business reasons are shielded from liability . . . . " Formall, 166 Mich. App. at 779. Again, there are no plausible allegations that Freddie Mac was motivated by anything other than its legitimate business purpose of placing persons and/or businesses on the List; and Defendant is entitled to dismissal of Plaintiffs' claim for intentional interference with a business relationship. Dismissal of that claim also results in a dismissal of Plaintiffs' claim for intentional interference with a contractual relationship, Count

II, because even though the elements are slightly different, the analysis of whether a defendant acted wrongfully are the same. Badiee v. Brighton Area Sch., 265 Mich. App. 343 (2005).

## II. DEFAMATION

To support a cause of action for defamation, a plaintiff must prove the following: 1) a false and defamatory statement concerning the plaintiff, 2) an unprivileged publication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Michigan Microtech, Inc. v. Federated Publ'ns, Inc., 187 Mich. App. 178, 182 (1991).

Plaintiffs' defamation claims, as to William Elias individually as well as the other plaintiffs, fail because the publications at issue were true; they *were* placed on the List. To the extent Plaintiffs claim being put on the List constitutes defamation, any connotations associated with being on the List are not sufficiently objective to be considered defamatory. In Michigan, in order to sustain an action for defamation, an alleged statement must be provably false. Ireland v. Edwards, 230 Mich. App. 607, 614 (1998). Where, as here, the truth or falsity of the statement is not objectively verifiable, there can be no action for defamation. Freddie Mac's opinion that Plaintiffs' business practices present it with an "undue risk" is not specific enough to sustain a defamation suit.

In addition, Plaintiffs have not plausibly alleged that any purported defamatory statements were made maliciously. See Reddy v. J P Morgan Chase Bank, 2011 WL 1641261 at *4 (S.D. Ohio 2011). In Michigan, a "qualified privilege extends to all communications made bona fide upon any subject matter in which the party communicating has an interest . . . to a person having a corresponding interest or duty." Michigan Mun. Risk Mgmt. Auth. v. State Farm Fire and Cas. Co., 559 F. Supp. 2d 794, 805 (E.D. Mich. 2008). In this case Freddie Mac's decision to place Plaintiffs

on the List is entitled to the privilege.  See Family Home and Fin. Ctr., Inc. v. Federal Home Loan Mortgage Corp., 525 F.3d 822, 827 (9th Cir. 2008).  Finding that Plaintiffs have failed to advance plausible allegations of malice by Freddie Mac, the court will dismiss Counts III and IV.

### III. ANTITRUST VIOLATIONS

Plaintiffs allege that placing them on the List amounts to a "boycott" or global "refusal to deal" in violation of the Sherman Act and Michigan's Antitrust Reform Act.  "In determining whether restraints of trade unreasonably restrict competition, courts have utilized two methods of analysis–the *per se* rule and the rule of reason."  United States v. Cooperative Theatres of Ohio, Inc., 845 F.2d 1367, 1370 (6th Cir. 1988).  Under the *per se* rule, there must be some anti-competitive purpose.  Where a refusal to deal is "motivated solely by . . . concern for the integrity" of the business, there is not a *per se* violation.  E.A. McQuade Tours, Inc. v. Consolidated Air Tour Manual Comm., 467 F.2d 178, 187 (5th Cir. 1972).  In this case, a *per se* violation cannot be found because, again, Freddie Mac uses the List to prevent undue risk to the company.

"The rule of reason . . . requires a court to analyze the history of the restraint and the restraint's effect on competition."  National Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club, 325 F.3d 712, 718 (6th Cir. 2003).  In order to prevail, "the plaintiff must establish that the restraint produces significant anticompetitive effects within the relevant market." Id. at 719-20.  In this case Plaintiffs' allegations fail to identify the relevant geographic market.  The United States Court of Appeals for the Ninth Circuit has determined that Freddie Mac's use of the List does not constitute unfair competition because of Freddie Mac's legitimate business reason for using it.  Family Home, supra, 525 F.3d at 826.  Therefore, Defendant is entitled to dismissal of the antitrust claims in Count V and VI.

## IV. CIVIL CONSPIRACY

Plaintiffs claim that the servicers' and lenders' compliance with Freddie Mac's decision to place them on the List amounts to civil conspiracy, which is defined as a combination of two or more persons who, through some concerted action, "accomplish an unlawful purpose or accomplish a lawful purpose by criminal or unlawful means." Rosenberg v. Rosenberg Bros. Special Account, 134 Mich. App. 342, 354 (1984).

In this case Plaintiffs cannot establish a civil conspiracy claim because there is no underlying tort. "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." Early Detection Ctr., P.C. v. New York Life Ins. Co., 157 Mich. App. 618, 632 (1986)(citations omitted). Moreover, Plaintiffs cannot plausibly allege any agreement for the purposes of any unlawful act. Freddie Mac requires its seller/servicers to agree to all terms and conditions set forth in the Guide, including those involving placement on the List. Therefore, Freddie Mac is also entitled to dismissal of Plaintiffs' civil conspiracy claim.

## **ORDER**

It is hereby **ORDERED** that defendant Freddie Mac's February 14, 2013 motion to dismiss is **GRANTED.**

                         s/John Corbett O'Meara
                         United States District Judge

Date:  September 25, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, September 25, 2013, using the ECF system and/or ordinary mail.

                         s/William Barkholz
                         Case Manager